IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SLATER HOWELL, III, <br><br> Petitioner, <br><br> vs. <br><br> WARDEN TOM SCHWEITZER, <br><br> Respondent. | CASE NO. 1:20-cv-2853 <br><br> DISTRICT JUDGE <br> PAMELA A. BARKER <br><br> MAGISTRATE JUDGE <br> JAMES E. GRIMES JR. <br><br> **REPORT &** <br> **RECOMMENDATION** |

Petitioner Slater Howell filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Howell is in custody at the Madison Correctional Institution due to a journal entry of sentence in the case *State v. Howell*, Cuyahoga County Court of Common Pleas, Case No. CR-16-603024-A. This matter has been referred to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eighth Appellate District summarized the facts underlying Howell's conviction as follows:

{¶5} The state's evidence demonstrated that on the night of April 7, 2014, Saha was working alone behind the counter at the Prime Station on Granger Road in Maple Heights. According to customer Bruce Tyus ("Tyus"), a man in a gray hooded sweatshirt with the hood pulled tightly over his head approached him at the pumps and asked how many people were inside the store. Tyus replied that one or two people were inside. The man walked inside and shortly after that, Tyus heard gunshots.

{¶6} Dennis Hanson ("Hanson") testified that around 10:30 p.m., he had stopped at a traffic light near the Prime Station and observed three individuals in hooded sweatshirts repeatedly crossing Granger Road at Milo Avenue. After the shooting, Hanson reviewed police photos and identified three people as "possibly" involved, but he was unsure if Howell was among these individuals.

{¶7} Customer Sam Killings ("Killings") went into the store and waited for service. After a few minutes, he looked behind the counter and observed the clerk on the floor "with his eyes rolling in the back of his head." One of the cash register drawers was opened.

{¶8} Saha died from his injuries. According to Cuyahoga County Deputy Medical Examiner Dr. Joseph Felo ("Dr. Felo"), Saha sustained a gunshot wound to his torso that perforated his aorta and caused him to bleed to death.

{¶9} Maple Heights Detective Andrew Sperie ("Det. Sperie") testified that he collected a white plastic bag from the floor of the Prime Station office and marked it as item no. 3 on the police evidence log. Det. Sperie checked out a number of leads, and subsequently received a tip through Crime Stoppers claiming that Howell was the assailant.

{¶10} Cuyahoga County Regional Forensic Science Laboratory ("CCRFSL") Analyst Carey Baucher ("Baucher") testified that initial DNA analysis of the white plastic bag revealed a mixture from more than three unidentified individuals. Because of the number of contributors, the white plastic bag recovered at the crime scene was sent to Cybergenetics Laboratory ("Cybergenetics") that utilizes the True Allele computer program to perform the calculations for genotyping mixed contributor samples. Baucher was cross-examined at length about the reliability of True Allele given its source code, and she

repeatedly indicated that she is not a computer programmer and did not perform the genotyping of the mixed contributor samples. However, Baucher stated that "the program is reliable when we set up certain experiments and certain mixtures that we know what goes into these and what the results should be, and it has come out perfect every time."

{¶11} Jennifer Hornyak ("Hornyak") of Cybergenetics, stated that True Allele is the subject of 34 validation studies, one of which was completed by the CCRFSL. The True Allele software considers the distribution of gene allele pair values and works out all of the different genotype combinations with their associated probabilities in order to derive match statistics. According to Hornyak, the sample from the white plastic bag had degraded overall, but there was a match between it and Howell that is 98 thousand times more probable than a coincidental match to an unrelated African-American person. The match between the white plastic bag and Saha is 224 thousand times more probable than coincidence.

{¶12} Hornyak also testified that the source code for True Allele is a proprietary trade secret, but is available to defense experts who sign confidentiality agreements. Defense experts are also invited to create a mixed contributor DNA sample of six individuals in order to test True Allele's accuracy. In this case, Cybergenetics provided the defense with the validation studies, tutorials, and software needed to view the source code as well as the supporting case files.

{¶13} Monique Tatum ("Tatum"), Howell's former girlfriend, testified that after she and Howell broke up, she posted news footage of Saha's assailant on her Facebook page. She also posted a private message to "Gutta Boii," the name of a Facebook account used by Howell and others. The next day, Howell shot at Tatum. It is undisputed that Howell pled guilty to attempted felonious assault with a three-year firearm specification in Cuyahoga C.P. No. CR-14-586451-A, in connection with the attack on Tatum and was sentenced to five years of imprisonment.

{¶14} Tatum gave a statement to police outlining that after Saha was killed, Howell refused to go into the Prime Station. According to Tatum's statement, Howell went to the station with "Maine" and "Ken," and he committed the crime in order to show that he was ready to join the Heartless Felons. Howell reportedly insisted that he had obtained several thousand dollars from the robbery and not $50 as stated in news reports. Tatum also told police that the clothing worn by the assailant was similar to clothing that Howell owns.

3

{¶15} Rufus Harris ("Harris") testified that Howell was his cell mate at Lorain Correctional Institution. Howell experienced nightmares and confided to Harris that he and his friend Maine wanted to commit a robbery, so they drove around and ended up at the Prime Station. They parked across the street. After learning that no customers were inside, Howell reportedly approached with his hood tied tightly around his face. The clerk jumped up to lock the bulletproof door, and Howell shot him in the chest with a .38 caliber weapon. Harris also stated that Howell hurt his leg while jumping over the counter to get to the cash register. Although the police believed that Howell dropped a glove at the crime scene, he denied that he had done so.

{¶16} Harris admitted that in exchange for this information, he did not have to serve the final six months of his sentence. Harris denied that he learned the details of the crime from television reports or reading a letter to Howell in which one of his friends, Kenneth Pinkney ("Pinkney"), threatened to blame the Prime Station shooting on Howell unless Howell told police that he owned a weapon found in Pinkney's possession.

{¶17} Howell testified on his own behalf. He stated that he receives money from a wrongful death action, and he denied robbing and shooting Saha. Howell also denied confessing the crime to Tatum and Harris. Howell asserted that Tatum fabricated her claims due to romantic jealousy and frustration at not getting money from him. Howell maintained that he and Harris were housed together only for several days and stopped sharing a cell after he caught Harris going through his mail. Howell testified that "Maine," or Kwamaine Davis ("Davis"), killed Saha. Howell indicated that he was being framed by Tatum, with the help of the police, for refusing to join the Heartless Felons.

*State v. Howell*, No. 107545, 2019 WL 3764610, at *1–3 (Ohio Ct. App. Aug. 8, 2019).

### Procedural background

*1.  Trial court proceedings*

In February 2016, a Cuyahoga County Grand Jury indicted Howell on 8 counts for the death of Babul Saha—2 counts of aggravated murder with

4

firearm specifications; 2 counts of aggravated robbery with firearm specifications, notices of prior conviction specifications, and repeat violent offender specifications; one count of murder with firearm specifications; 2 counts of felonious assault with firearm specifications, notices of prior conviction specifications, and repeat violent offender specifications; and one count of robbery with firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification. Doc. 11-1, at 6–13 (Exhibit 1). The grand jury also indicted Howell on 6 counts for the death of Theodore Wright, another victim on another day. *Id*. at 14–19. Howell, through counsel, pleaded not guilty. *Id*. at 20 (Exhibit 2).

In June 2016, in a new case, a Cuyahoga County Grand Jury indicted Howell on 5 counts including aggravated robbery and felonious assault against Joe Houston. Doc. 11-1, at 21 (Exhibit 3). Howell pleaded not guilty. *Id*. at 24 (Exhibit 4).

In August 2016, Howell retained new counsel for both cases. Doc. 11-1, at 25–28 (Exhibits 5, 6).

In September 2016, Howell filed a motion asking the court to issue an order journalizing the court's prior rulings—that the *Saha* counts would be tried separately from the *Wright* counts and the *Wright* counts would be tried first. Doc. 11-1, at 30, 68 (Exhibits 7, 10). The state opposed Howell's motion and moved to join the first case—*Saha* and *Wright*—with the second case— *Houston*. *Id*. at 59, 63 (Exhibits 8, 9). The court ruled that it would try the

counts against the 3 victims separately and try the *Saha* counts first. *Id*. at 99 (Exhibit 20); Doc. 11-2, at 13 (transcript).

Howell filed a motion asking the court to authorize funds for a DNA expert, which the court granted. Doc. 11-1, at 74, 78 (Exhibits 11, 12). Howell filed motions to authorize funds to retain a computer software engineer expert and for independent DNA testing at the state's expense, which the state opposed. *Id*. at 79, 83, 87 (Exhibits 13, 14, 15). The court denied Howell's motions the day of trial.[1] Doc. 11-2, at 149–50, 158.

Howell filed a motion requesting permission for his attorneys to provide him with all the discovery they had received.[2] Doc. 11-1, at 92 (Exhibit 16). Howell filed a pro se motion to disqualify his counsel, and then withdrew any pro se motions and asked to have all pro se correspondence stricken from the record. *Id*. at 97 (Exhibit 18).

Prior to trial, Howell waived his right to a jury on the repeat-violent-offender and notice-of-prior-commitment specifications and agreed to have them tried to the court. Doc. 11-1, at 98 (Exhibit 19).

After trial for Saha's murder, the jury found Howell guilty of all counts and firearm specifications. Doc. 11-1, at 100 (Exhibit 21). Then, Howell pleaded

---

[1]    After Howell filed his motions, he indicated that he did not want to pursue a challenge to the DNA evidence. So when Howell's attorneys pursued a challenge to the DNA evidence on the day of trial, the court denied Howell's motions and his requests as untimely. Doc. 11-2, at 142–48.

[2]    On the day of trial, the court denied all motions still pending on the docket that weren't yet addressed. Doc. 11-2, at 158.

6

guilty to amended charges for Wright's death—involuntary manslaughter with firearm specifications and robbery. Doc. 11-1, at 101 (Exhibit 22).

The same day, Howell pleaded guilty to amended charges—felonious assault—in the case involving Houston. *Id*. at 102 (Exhibit 23). The court sentenced Howell to 8 years in prison for felonious assault, to run consecutive to his sentences in the *Saha* and *Wright* case. *Id*. at 103 (Exhibit 24).

In November 2017, the court sentenced Howell in the *Saha* and *Wright* case. The prosecution dismissed the remaining repeat violent offender and notice of prior commitment specifications. Doc. 11-1, at 104 (Exhibit 25). The court merged various counts and firearm specifications and sentenced Howell for the crimes against Saha—life in prison without parole for aggravated murder and 3 years for the firearm specification, and 11 years for aggravated robbery and 3 years for that firearm specification. *Id*. For the crimes against Wright, the court sentenced Howell to 11 years for involuntary manslaughter, 3 years for the firearm specification, and 8 years for robbery. *Id*. All the sentences were to run consecutively for a total prison term of life without parole, plus 39 years. *Id*.

### 2. *Direct appeal*

In December 2017, Howell pro se appealed to the Ohio court of appeals. Doc. 11-1, at 107 (Exhibit 27). The appellate court dismissed Howell's appeal because Howell didn't file a praecipe in accordance with the local rules. *Id*. at 114 (Exhibit 28). Howell then filed motions in the trial court for appointment

of counsel, transcripts at the state's expense, and a delayed appeal, in which Howell argued that he thought trial counsel was going to file his appeal. *Id.* at 115–22 (Exhibits 29–31). Howell also filed a second appeal in the Ohio court of appeals. *Id.* at 123 (Exhibit 32). The appellate court dismissed Howell's appeal as untimely and remarked that Howell filed a motion for a delayed appeal in the trial court, but not in the appellate court as the rule required. *Id.* at 132 (Exhibit 33).

In August 2018, Howell, through new counsel, filed in the Ohio court of appeals a notice of appeal and a motion for leave to file a delayed appeal and for transcripts at the state's expense. Doc. 11-1, at 136–148 (Exhibits 35, 36). The court granted Howell's motion. *Id.* at 149 (Exhibit 37). In his brief, Howell raised the following assignments of error:

> 1. Mr. Howell's was denied his constitutional right to the effective assistance of counsel when, after being accused of witness tampering and attempting to suborn perjury his attorney's simply declared their innocence rather than asking the trial court to make findings and demanding a mistrial.[3]
>
> 2. The trial court's comments bolstering the credibility of the government's DNA "expert" prejudiced Mr. Howell's defense.
>
> 3. The trial court committed error when it imposed consecutive sentences because its finding that consecutive sentences were necessary to protect the public is altogether unsupportable and irrational.

---

[3]     Throughout this report and recommendation, Howell's claims are reproduced as written and have not been edited.

Doc. 11-1, at 150 (Exhibit 38). The state filed a response and Howell replied. *Id.* at 174, 194 (Exhibits 39, 40). In August 2019, the Ohio court of appeals affirmed the trial court's judgment. *Id.* at 200–13 (Exhibit 41).

In September 2019, Howell appealed to the Ohio Supreme Court. Doc. 11-1, at 214 (Exhibit 42). In his memorandum in support of jurisdiction, he raised the following propositions of law:

> I. A defendant is prejudiced by ineffective assistance of counsel when counsel focus on their own innocence in the face of tampering charges rather than focusing on their client.
>
> II. A defendant is prejudiced when the trial court bolsters the credibility of a State's expert witness.
>
> III. A consecutive sentence attached to a life sentence without the possibility of parole is irrational.

Doc. 11-1, at 217 (Exhibit 43). In December 2019, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Howell's appeal. *Id.* at 247 (Exhibit 45).

### 3. *Application to reopen appeal*

In December 2019, Howell pro se filed in the Ohio court of appeals an untimely application to reopen his appeal under Ohio Appellate Rule 26(B). Doc. 11-1, at 248 (Exhibit 46). For cause for his untimely application, Howell explained that he spent 8 days in the hospital after being assaulted. *Id.* at 249. In his application, Howell argued that appellate counsel provided ineffective assistance for not raising the following assignments of error on appeal:

> 1. Howell's convictions are against the manifest weight and sufficiency of evidence, in violation of his Due Process protections under the Fifth

and Fourteenth Amendments to the U.S. Constitution and Article I. Section § 10 of the Ohio Constitution.

2. Howell was denied a fair trial and his due process protections when the trial court improperly interjected its opinion during jury instructions, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections § 5 and 10 of the Ohio Constitution.

3. Howell was denied a fair trial and his due process protections when the trial court denied the defense's request for a *Daubert* hearing, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections § 5 and 10 of the Ohio Constitution.

Doc. 11-1, at 253, 259, 261. In February 2020, the Ohio court of appeals denied Howell's application, stating that Howell didn't show good cause for filing his application late. *Id*. at 271 (Exhibit 48). Howell did not appeal.

### 4. *Federal habeas corpus petition*

In December 2020, Howell filed a federal habeas corpus petition under 28 U.S.C. § 2254. Doc. 1. He raised the following grounds for relief:

**Ground 1**: Ineffective assistance of counsel in trial and appellate court counsel

*Supporting facts*: In trial court Aaron Brocker and Michael Cheselka failed to demand a mistrial when a witness falsely accused Mr. Howell of witness tampering instead of defense counsel focusing on their client they focused on tampering charges rather than their client's innocence.

**Ground 2**: Denied a fair trial

*Supporting facts:* The defendant Mr. Howell was prejudiced when the trial court bolsters the credibility of a state's witness, also interjecting its opinion in jury instructions. Also the court denied Mr. Howell to a Daubert hearing to challenge the DNA an the physical evidence used against him which prejudiced Mr. Howell.

**Ground 3**: Irrational sentence

   *Supporting facts*: A consecutive sentence is irrational when its attached to a sentence with (LWOP) Also a first-time offender this sentence is also irrational.

**Ground 4**: Denied a fair trial do to being denied a Daubert hearing to challenge the State's DNA expert an DNA evidence do to it being up to 6 DNA's on this object.

   *Supporting facts*: If a Daubert hearing was granted the outcome of this trial would have been much different an also if this hearing was held the physical evidence would of been dismissed do to the defendant DNA not being on these objects. With these objects being presented it prejudiced Mr. Howell an he didn't receive a fair trial at all. Which is a violation of his due process.

Doc. 1, at 7–8. Respondent Warden Tom Schweitzer filed a Return of Writ. Doc.

11. Howell didn't file a traverse and the time to do so has passed.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting

*Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

    *1.    Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present the claims to the state courts as federal constitutional issues and not just as issues arising under state law. *See, e.g., Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).

2. *Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no

longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

### 3. *Merits Review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially

14

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard.

*Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1.     A portion of Ground 1 is procedurally defaulted and the remainder fails on the merits*

In Ground 1, Howell argues that trial counsel and appellate counsel were ineffective because trial counsel failed to demand a mistrial after a witness falsely accused Howell of witness tampering. Doc. 1, at 5. The Warden argues that Ground 1 fails on the merits. Doc. 11, at 17–18.

Howell's claim that appellate counsel was ineffective is procedurally defaulted because Howell didn't allege in his application to reopen that appellate counsel was ineffective for not raising a witness tampering or mistrial claim. So Howell never presented this claim to the state courts and state law no longer allows Howell to raise it. *See Williams*, 460 F.3d at 806 (a claim not presented to the state courts is procedurally defaulted when state

16

law no longer allows the petitioner to raise the claim). Howell doesn't allege cause to excuse his procedural default and he doesn't show actual innocence.

To show that trial counsel was ineffective, Howell must prove that trial counsel's performance was deficient and that he was prejudiced as a result. *Premo v. Moore*, 562 U.S. 115, 121 (2011). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). As to performance, Howell must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. As to prejudice, Howell must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 562 U.S. at 122 (citation and internal quotation marks omitted). A court applies a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). And the court's review is "doubly deferential"—to counsel, under *Strickland*, and to the state court's decision, under AEDPA. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The Ohio court of appeals considered Howell's claim:

{¶20} In the first assigned error, Howell complains that his trial attorneys were ineffective in response to Tatum's claim that Howell and his lawyers were "contacting me [saying] don't show up to court. * * * They said come and rewrite my statement and Slater have $500 to give me if I do." Howell complains that trial counsel denied Tatum's allegations but did not request factual findings or seek a mistrial.

17

{¶21} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Id*. at 689. There is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland* at 689, 466 U.S. 668, 687, 104 S.Ct. 2052. Tactical or strategic trial decisions, even if ultimately unsuccessful, generally do not constitute ineffective assistance of counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶22} In this assigned error, we note that Tatum's claims were made out of the presence of the jury, and trial counsel informed the court that they did not contact Tatum, did not have her phone number, and her claims were "100 percent false [and] totally ridiculous." Counsel's response was consistent with their overall strategy of portraying Tatum as a perjurer, and they stated that this was "another example of her perjuring herself as she did all throughout her testimony," that she "came in here today and much of what she said was demonstrably false," and that she "did demonstrate some falsity in her testimony." Further, the record indicates that Tatum claimed to have information about other charged and uncharged offenses that Howell allegedly committed. With this in mind, and after reviewing the entire record, we conclude that counsel could have reasonably determined that further pursuit of Tatum's "rewrite my statement" claims would not have aided the defense, and they made a sound tactical decision by simply issuing strong denials of the claims. *State v. Cody*, 8th Dist. Cuyahoga No. 77427, 2002-Ohio-7055, ¶ 63 (counsel not ineffective for failing to request a mistrial and failing to present evidence challenging juror-tampering allegation); *State v. Rodano*, 8th Dist. Cuyahoga No. 57185, 1990 WL 95737 (July 12, 1990) (counsel not ineffective for failing to object to characterization of appellant's affidavit as "nothing but perjury"); *State v. Bolen*, 3d Dist. Hancock No. 5-01-25, 2002 WL 255125 (Feb. 22, 2002) (counsel not ineffective for failing to object to claim of witness intimidation).

{¶ 23} Therefore, we conclude that the first assigned error is without merit.

*Howell*, 2019 WL 3764610, at *3–4.

The Ohio court of appeals applied the correct *Strickland* standard to Howell's ineffective assistance of counsel claim. The court's recitation of events is accurate, *see* Doc. 11-4, at 190–99, and Howell doesn't claim otherwise. The court's reasoning and conclusion that counsel made a sound tactical decision by not requesting factual findings or a mistrial is not "so ill-chosen that it permeates the entire trial with obvious unfairness." *See Miller v. Francis*, 269 F.3d 609, 615–16 (6th Cir. 2001) ("A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness") (quoting *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001)). So the aspect of Ground 1 that is not procedurally defaulted fails on the merits.

2.    *Ground 2 fails on the merits*

In Ground 2, Howell argues that he was denied a fair trial because the trial court bolstered the credibility of the state's DNA witness and "interject[ed] its opinion in jury instructions."[4] Doc. 1, at 6. The Warden argues that Ground 2 is procedurally defaulted because Howell's counsel didn't object

---

[4]    Ground 2 has 2 parts—a claim that the trial court bolstered witness testimony and injected its opinion into the jury instructions and a claim that the court wrongfully denied Howell a *Daubert* hearing. Doc. 1, at 6. I consider the *Daubert* portion of Ground 2 when I discuss Ground 4, *infra*, in which Howell also claims that the trial court wrongfully denied him a *Daubert* hearing. And Howell's claim that the trial court "interject[ed] its opinion in jury instructions" is waived because Howell doesn't identify what portion of the jury instructions he is referring to.

19

to the trial court's statements during trial and the Ohio court of appeals applied Ohio's contemporaneous objection rule when it reviewed Howell's claim for plain error. Doc. 11, at 19–25. *See, e.g., Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (explaining that the Ohio appellate courts enforce the contemporaneous objection rule's procedural bar when they review a claim for plain error).

As shown below, the Ohio court of appeals did not mention Ohio's contemporaneous objection rule or apply plain error review to Howell's claim, so Ground 2 is not procedurally defaulted.

The Due Process Clause requires that parties be given a "'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Gordon v. Lafler*, 710 F. App'x 654, 663 (6th Cir. 2017) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05, (1997)). "During a jury trial, 'the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct.'" *Gordon*, 710 F. App'x at 663 (quoting *Quercia v. United States*, 289 U.S. 466, 469 (1933)). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Gordon*, 710 F. App'x at 663–64 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

> "Judicial misconduct is found where the judge's remarks clearly indicate a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case, or an alignment on the part of the Court with one of the parties." *United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006) (citations and internal quotation marks omitted). Even sarcastic comments which "could have been phrased more diplomatically" do not

amount to misconduct when they "primarily evidence the judge's effort to seek additional information from witnesses and not any prejudice or bias." *Id.*; *see United States v. Powers*, 500 F.3d 500, 511 (6th Cir. 2007) ("A trial court judge ... may interject himself into the trial, speak to counsel, and question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation.").

*United States v. Ross*, 703 F.3d 856, 878 (6th Cir. 2012).

To recap, the Ohio court of appeals summarized the DNA testimony at

trial:

{¶9} Maple Heights Detective Andrew Sperie ("Det. Sperie") testified that he collected a white plastic bag from the floor of the Prime Station office and marked it as item no. 3 on the police evidence log. Det. Sperie checked out a number of leads, and subsequently received a tip through Crime Stoppers claiming that Howell was the assailant.

{¶10} Cuyahoga County Regional Forensics Science Laboratory ("CCRFSL") Analyst Carey Baucher ("Baucher") testified that initial DNA analysis of the white plastic bag revealed a mixture from more than three unidentified individuals. Because of the number of contributors, the white plastic bag recovered at the crime scene was sent to Cybergenetics Laboratory ("Cybergenetics") that utilizes the True Allele computer program to perform the calculations for genotyping mixed contributor samples. Baucher was cross-examined at length about the reliability of True Allele given its source code, and she repeatedly indicated that she is not a computer programmer and did not perform the genotyping of the mixed contributor samples. However, Baucher stated that "the program is reliable when we set up certain experiments and certain mixtures that we know what goes into these and what the results should be, and it has come out perfect every time."

{¶11} Jennifer Hornyak ("Hornyak") of Cybergenetics, stated that True Allele is the subject of 34 validation studies, one of which was completed by the CCRFSL. The True Allele software considers the distribution of gene allele pair values and works out all of the different genotype combinations with their associated probabilities in order to derive match statistics. According to Hornyak, the sample from the white plastic bag had degraded overall, but there was a match between it and Howell that is 98 thousand times more probable than a coincidental match to an unrelated African-American person. The match between the white

plastic bag and Saha is 224 thousand times more probable than coincidence.

{¶ 12} Hornyak also testified that the source code for True Allele is a proprietary trade secret, but is available to defense experts who sign confidentiality agreements. Defense experts are also invited to create a mixed contributor DNA sample of six individuals in order to test True Allele's accuracy. In this case, Cybergenetics provided the defense with the validation studies, tutorials, and software needed to view the source code as well as the supporting case files.

*Howell*, 2019 WL 3764610, at *2. The Ohio court of appeals then considered

Howell's claim:

{¶ 24} In the second assigned error, Howell asserts that the trial court improperly bolstered the testimony of the state's DNA witness who testified that she found True Allele reliable when the court remarked, "[s]ustained for a couple reasons. First of all, it's speculative, and number two, she's not a computer expert. * * * And I think the analogy she created about us using Google and not having the source code is a good one." In opposition, the state notes that Howell inaccurately claims that this exchange occurred during the cross-examination of Hornyak, an analyst from Cybergenetics, when, in fact, it occurred during the cross-examination of Baucher from the CCRFSL, who had nothing to do with the development of True Allele technology. The state maintains that this is an important clarification because the line of cross-examination referenced "coding errors" in True Allele that Baucher could not address.

{¶ 25} In presiding over a trial, a judge must be cognizant of the effect of his or her remarks upon the jury. *State v. Wade*, 53 Ohio St.2d 182, 187, 373 N.E.2d 1244 (1978). An appellate court reviewing the propriety of a judge's remarks before a jury must determine whether the comments were prejudicial to a defendant's right to a fair trial. *Id*. at 188, 373 N.E.2d 1244. The *Wade* court adopted the following rules for evaluating a judge's comments:

(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon

the jury, and (5) to their possible impairment of the effectiveness of counsel.

*Id.*

{¶ 26} As to the issue of prejudice, we note that ultimately, Howell maintained that he was being framed for the Saha murder, and his testimony concludes with the following exchange:

> Q. But your bag with your DNA is in it, right? Degraded or not, Mr. Howell, it's in there, right?
>
> A. Yes, it is.

{¶ 27} Also as to prejudice, the defense initially challenged True Allele as unreliable, but later withdrew that challenge. Although the defense discussed reliability again on the eve of trial, they conceded that Howell did not authorize them to raise that challenge, so the court did not hold an admissibility hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court also noted that True Allele had been accepted in *State v. Shaw*, Cuyahoga C.P. No. CR-13-575691 (Oct. 10, 2014). *See also State v. Mathis*, Cuyahoga C.P. No. CR-16-611539-A (Apr. 13, 2018). Moreover, nothing in the record suggests that True Allele is unreliable.

{¶ 28} As to the circumstances surrounding this testimony, this line of cross-examination inappropriately raised the issue of "coding errors" at Cybergenetics with Baucher who works at CCRFSL and is not a computer analyst. In response to defense questioning, Baucher responded that she does "not need to know the lines of code to know that the program is reliable when we set up certain experiments and certain mixtures that we know what goes into these and what the results should be, and it has come out perfect every time." Offering an analogy, she said, "You don't have the source code to Microsoft Word or Excel, but you use that quite often."

{¶ 29} Applying all of the foregoing, we find that the comments were not prejudicial to Howell's right to a fair trial. This assigned error lacks merit.

*Howell*, 2019 WL 3764610, at *4–5.

The Ohio court of appeals' finding that Howell's attorney asked questions about computer "coding errors" when cross examining a witness, who was a DNA expert and who had repeatedly stated that she didn't know anything about computer programming and was not familiar with the computer code the attorney was referencing, was accurate.[5] *See* Doc. 11-3, at 179–85. Howell's attorney asked the witness how she knew that the results of the True Allele computer program were accurate when she didn't know anything about computer programming and the witness answered, "I don't need to know anything about computer programming. What I need to know about is DNA analysis, statistics," and the fact that her office had tested the program and "it has come out perfect every time." *Id.* at 180–81. The witness explained, "You don't have the source code to Microsoft Word or Excel, but you use that quite often." Tr. 181. Howell's attorney stated, "I don't know, I don't understand your point." Tr. 181. Howell's attorney continued to ask the DNA expert questions about computer code and asked about a computer program belonging to one of True Allele's competitors, which the witness had never used. *Id.* at 181–84. Then the attorney circled back to ask the witness again about errors in True Allele's source code. *Id.* at 184. So the judge's subsequent comment when sustaining the state's objection—"[S]he's not a computer expert. She told us that. And I think the analogy she created about us using

---

[5]     The True Allele software expert testified after the DNA expert. Doc. 11-4, at 3–64. Howell's attorney did not ask the software expert about potential errors in the computer source code.

Google and not having the source code was a good one"—was made "to clear up confusion regarding the evidence [and] aid in its orderly presentation." *See Powers*, 500 F.3d at 511.

The Ohio court of appeals' finding that the trial court's comments did not violate Howell's right to a fair trial was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### 3.  *Ground 3 is not cognizable*

In Ground 3, Howell argues that the 39-year consecutive sentence attached to his life-in-prison-without-parole sentence was "irrational," especially for a first-time offender like Howell. Doc. 1, at 6. The Warden argues that Ground 3 is not cognizable because it challenges state sentencing laws. Doc. 11, at 25–27.

Ground 3 is not cognizable because Howell challenges the trial court's application of Ohio sentencing laws. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); *see Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (an alleged violation of state sentencing laws is not cognizable on federal habeas review) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). And Howell has not shown that his sentencing claim implicates federal constitutional concerns. *See Oregon v. Ice*, 555 U.S. 160, 171 (2009)

(state trial courts' imposition of consecutive sentences does not implicate federal constitutional concerns). As the Ohio court of appeals explained,

> {¶30} Howell next asserts that because the trial court sentenced him to life imprisonment without the possibility of parole for the aggravated murder of Saha, it was error to impose additional consecutive sentences for the aggravated robbery of Saha, the involuntary manslaughter and robbery of Wright, and the felonious assault on Houston. He argues that additional consecutive sentences are not necessary to protect the public or to punish the offender.

> {¶31} Howell recognizes that in *State v. Chavez*, 8th Dist. Cuyahoga No. 99436, 2013-Ohio-4700, this court had held that sentences imposed consecutively to life-without-parole sentences are moot because the issue is "academic" — this court can issue no decision that will have any practical effect on the controversy. *Id.* at ¶ 47. He argues that review of the sentence is authorized under *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, because the court held that it was proper for an appellate court to review whether life sentences were properly made consecutive. However, this court rejected the same argument in *State v. Herrington*, 8th Dist. Cuyahoga No. 106225, 2018-Ohio-3049, ¶ 35-37, and *State v. Campbell*, 8th Dist. Cuyahoga No. 103982, 2016-Ohio-7613, ¶ 11. *Accord State v. Austin*, 7th Dist. Mahoning No. 16 MA 0068, 2019-Ohio-1185, ¶ 90-95. Although we acknowledge Howell's interest in preserving the issue for further review, we do not reach a different result herein, and we find Howell's third assigned error moot. In any event, all of the findings required for consecutive sentences were made in this case when the trial court stated:

>> THE COURT: These cases are going to be run consecutively for the following reasons. Obviously, there were guns involved. This is necessary to protect the citizens of this community. If this defendant were ever released, I believe his crime wave would begin anew. It's necessary to punish the offender. It is not disproportionate for the harm that he has caused in these three separate shootings. We should note that two of these crimes were committed after the first crime. The third crime was committed after the first two crimes. So no single sentence would adequately reflect the seriousness of this individual's conduct. And obviously as the State of Ohio has delineated on the record * * * this

26

individual's criminal history shows that consecutive terms are needed to protect the public and punish the offender.

And just so we have a complete record, the Court has taken into consideration the following. He has an assault in 2009, Cuyahoga County Juvenile Court, was adjudicated delinquent. A domestic violence in 2009, adjudicated delinquent. A burglary and theft in 2009, adjudicated delinquent. An escape in 2010, adjudicated delinquent. Receiving stolen property in 2010, adjudicated delinquent. Trafficking in drugs, 2010, adjudicated delinquent. Resisting arrest, disorderly conduct, 2011, which was dismissed. Another burglary in 2012 in a theft case, adjudicated delinquent. Noise in a motor vehicle, 2013. Gross sexual imposition, attempted rape, kidnapping, in 2013, he pled guilty to aggravated burglary. He has been to the institution before on a two-year sentence. There are other misdemeanor arrests for playing loud music. Felonious assault was the 2014 case that he did two years on. And then these cases. So, I mean, his behavior has demonstrated that he has been an individual crime wave, you could say.

{¶ 32} In accordance with all of the foregoing, the third assigned error lacks merit.

*Howell*, 2019 WL 3764610, at *5–6.

Finally, as to Howell's bald assertion that he was a first-time offender, Howell doesn't show that the state court's recitation of his criminal history was false or that he lacked an opportunity to correct it. *See, e.g., Teneyuque v. Palmer*, No. 2:17-CV-13833, 2020 WL 1888828, at *9 (E.D. Mich. Apr. 16, 2020) ("A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct") (collecting cases).

4.      *Ground 4 is procedurally defaulted*

In Ground 4, Howell argues that he was denied a fair trial when the trial court rejected Howell's request for a *Daubert* hearing to challenge the state's DNA expert.[6] Doc. 1, at 6, 7. The Warden submits that Ground 4 is procedurally defaulted. Doc. 11, at 29–32.

Ground 4 is procedurally defaulted. Because this claim is based on the trial court record, Doc. 11-2, at 132–149, 158, Howell should have raised it on direct appeal but didn't. *See Williams*, 460 F.3d at 806 ("[I]if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted") (citing *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982)).

For cause to excuse his procedural default, Howell asserts that his appellate counsel refused to consider Howell's belief that the *Daubert* claim should have been raised on direct appeal. Doc. 1, at 7. Ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Although Howell raised a claim in his Rule 26(B) application to reopen that appellate

---

[6]      In *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 597 (1993), the Court held that Federal Rule of Evidence 702 requires a trial judge to ensure that an expert's testimony is relevant and based on a reliable foundation. But *Daubert* doesn't apply to state criminal proceedings, so Ground 4 is also not cognizable. *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) ("*Daubert* concerned the Federal Rules of Evidence which is not relevant to [the habeas petitioner's] conviction").

counsel was ineffective for not raising a *Daubert* claim on direct appeal, Howell procedurally defaulted *that* claim.[7] First, the claim is procedurally defaulted because the Ohio court of appeals applied a procedural bar when it denied as untimely Howell's Rule 26(B) application. *See Parker v. Bagley*, 543 F.3d 859, 862 (6th Cir. 2008). And second, the claim is procedurally defaulted because Howell didn't appeal to the Ohio Supreme Court the Ohio court of appeals' ruling on his Rule 26(B) application. *See Williams*, 460 F.3d at 806.

Howell doesn't allege cause to excuse the procedural default of his ineffective assistance of appellate counsel claim. He doesn't show actual innocence. Ground 4 is procedurally defaulted.

### Conclusion

For the reasons set forth above, I recommend that Howell's Petition be denied.

Dated: January 11, 2023


         */s/ James E. Grimes Jr.*
         James E. Grimes Jr.
         U.S. Magistrate Judge

---

[7] The fact that Howell raised an ineffective assistance of appellate counsel claim for failing to raise on direct appeal a *Daubert* claim does not preserve Howell's *Daubert* claim as a stand-alone ground for relief. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (explaining that "the two claims are analytically distinct") (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)).

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).